**WARD COUNTY WATER IMPROVEMENT DIST. NO. 2 v. WARD COUNTY IRR. DIST. NO. 1 et al.  (No. 1114.)**

(Court of Civil Appeals of Texas. El Paso. May 20, 1920. Rehearing Denied June 17, 1920.)

1. **Waters and water courses ⊜247(1)—Water improvement district not empowered to maintain action to adjudicate riparian water rights not acquired by it.**

A water improvement district established by commissioners' court under Acts 35th Leg. (1917) c. 87 (Vernon's Ann. Civ. St. Supp. 1918, arts. 5107—1 to 5107—117), while authorized to sue and be sued, and under sections 1, 24, and 108 (sections 5107—1, 5107—24, 5107—108) empowered to provide for irrigation of the land in the district, to own and construct reservoirs, etc., to acquire right of way, and to acquire water rights and privileges in any way that an individual or corporation may, cannot maintain action to adjudicate riparian water rights; it not having acquired them.

2. **Continuance ⊜6—Refusal to continue to bring in parties held proper where exception to petition of no right to assert the cause of action had been sustained.**

Where exception to petition to determine riparian water rights had been properly sustained on the ground that it was not alleged plaintiff owned the rights, and that it could not assert a right not owned by it, and there was no offer to amend, there was no error in refusing continuance to bring in riparian owners and contractual water right owners, there being no case left to continue, and such owners not being necessary parties to the suit. Rev. St. 1911, art. 1848.

3. **Appeal and error ⊜927(2)—In absence of showing, grounds of motion to dismiss cross-action granted to be assumed true.**

In the absence of any showing to the contrary, the grounds of a motion to dismiss cross-action granted must be assumed true.

4. **Abatement and revival ⊜8(2)—Cross-action between defendants held properly dismissed pending a suit involving its subject-matter.**

Cross-action of one defendant against another is properly dismissed on plaintiff's motion, where to permit its prosecution would necessitate continuance of the cause, and where there is a suit pending between one defendant and the predecessor in interest of the other involving the subject-matter of the cross-action.

Appeal from District Court, Martin County; Chas. Gibbs, Judge.

Action by the Ward County Water Improvement District No. 2 against the Ward County Irrigation District No. 1 and the Cedarvale Canal Company. Plaintiff's suit and cross-action of the Cedarvale Canal Company against its codefendant were dis-

missed, and plaintiff and defendant Cedarvale Canal Company appeal. Affirmed.

See, also, 214 S. W. 490.

Gaines & Corbett, of Bay City, Jno. H. Boogher, of Grandfalls, Lee Monroe, of Pecos, and Garrard & Baker, of Midland, for appellants.

J. E. Starley, of Pecos, and H. G. Russell, of Barstow, for appellee.

HIGGINS, J. This suit was brought by Ward County water improvement district No. 2, appellant here, hereinafter referred to as district No. 2, against Ward County irrigation district No. 1, hereinafter referred to as district No. 1, and the Cedarvale Canal Company.

By its first amended petition filed October 21, 1919, the plaintiff in substance alleged as follows: That it was a duly organized irrigation or water improvement district under the laws of Texas, and that district No. 1 was an irrigation district under Texas laws, and the Cedarvale Company was a foreign corporation claiming the right to do business in this state; that plaintiff had incurred heavy financial obligations in the purchase of canals, laterals, ditches, dams, headgates, reservoir rights, water rights, and water appropriations, and had issued its interest-bearing bonds in the sum of $65,000 secured by a lien upon the land situate in the district; that the plaintiff was organized for the purpose of acquiring the unappropriated waters of the Pecos river and furnishing same for irrigation purposes to the lands within the district, and also for appropriating, owning, and controlling appropriations of the waters of said river and furnishing same to said lands for irrigation purposes and domestic uses, and also for the purpose of operating canals for the benefit of the owners of riparian lands in the district abutting on said river so that the waters to which said lands were entitled for domestic and irrigation purposes might be delivered to them in the most economical and efficient manner; that about 43,000 acres of land were included in the district, about 33,000 acres thereof being riparian to the Pecos river; said riparian lands were described and the respective owners thereof named; that said lands were granted by the state prior to 1895. The petition further sets up various appropriations of water from the Pecos river for irrigation purposes made by various persons between the 6th day of September, 1890, and subsequent dates, and that the plaintiff was the successor in interest of the original owners of said appropriations and the irrigation systems of such appropriators, and that it and its predecessors in interest had been using said irrigation systems and making use of said water ap-

---

⊜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

propriations for about 24 years; that the defendants had each constructed dams in the Pecos river, thereby diverting from the river the waters thereof and conveying the same through their irrigation systems and supplying the same for irrigation purposes to lands adjacent to the systems of defendants, thereby depriving the plaintiff of the waters of the river. to which it was entitled.

There are other allegations of the petition which are quite lengthy, but the foregoing outlines the material allegations pertinent to this appeal.

The plaintiff sought to have its right to the waters of the river established, and asked that the defendants be enjoined from diverting any of the waters of the river and delivering same to nonriparian lands, and that they be restrained from using any of such water which would result in decreasing the flow of the stream so as to interfere with plaintiff taking water for. the proper irrigation of lands in its district, and that the rights of the defendants to the waters of the river be declared to be subordinate to the plaintiff's rights.

The plaintiff voluntarily took a nonsuit as to any and all causes of action set up in its petition "other than the rights to litigate the questions involved in the claim to riparian water rights of said stream." As to this remaining cause of action the court sustained an exception urged by the defendants and dismissed the suit. The sustained exception was to the effect that the petition was "insufficient in law in that it bases its cause of action upon the ownership of riparian lands, which ownership is vested in other parties, and not in the plaintiff, and said petition does not allege that the plaintiff is the owner of said riparian lands, or said riparian rights, and it cannot assert a cause of action herein not owned by it."

The plaintiff appeals from the dismissal of its suit upon the sustaining of the foregoing exception, and the Cedarvale Company appeals from the action of the court in striking out and dismissing a cross-action set up by it against its codefendant, district No. 1. The appeal of the original plaintiff in the cause, district No. 2, will be first considered.

[1] The petition does not allege that the plaintiff has in any wise acquired the riparian water rights of the lands situate in its district riparian to the Pecos river, but its contention, under its first assignment, in effect is that by virute of the incorporation of the district under the provisions of chapter 87, General Laws of the Thirty-Fifth Legislature (Vernon's Ann. Civ. St. Supp. 1918, arts. 5107—1 to 5107—117) the plaintiff "became a municipal corporation which took and held in trust, for the use and benefit of the lands within the district, all of the rights of each acre of land within the district, whether such rights were riparian,

prescriptive or appropriative," and therefore entitled to maintain this suit. This is the substance of the appellant's contention as set forth in its brief and written argument.

Chapter 87 of the Acts of the Thirty-Fifth Legislature and its subsequent amendments (Acts 36th Leg. [1919], c. 77) authorizes commissioners' courts to establish water improvement districts in their respective counties. Districts so established are authorized to sue and be sued. Among other powers conferred they are authorized to provide for the irrigation of the land included in the districts, to own and construct reservoirs, dams, wells, etc., to acquire the necessary right of way therefor, and they are vested with "full authority and right to acquire water rights and privileges in any way that any individual or corporation may acquire the same," and their boards of directors are authorized to construct all works and improvements necessary for the irrigation of lands in the district and the conveying of water for such purpose and all other purposes authorized by section 59, art. 16, of the Constitution. See sections 1, 24, and 108 of original act (Vernon's Ann. Civ. St. Supp. 1918, arts. 5107—1, 5107—24, 5107—108) and its amendments.

It will be noted that by the voluntary nonsuit of the plaintiff its cause of action narrowed down to litigation concerning the riparian water rights of the riparian lands within its district. These riparian water rights were appurtenant to the riparian lands and were owned by the various owners of those lands. The law under which the appellant is incorporated specifically authorizes the acquisition by it of water rights and privileges, but, as was said by Justice Gaines in Mud Creek Irrigation Co. v. Vivian, 74 Tex. 174, 11 S. W. 1078, "the law does not confer such rights and privileges themselves." In the opinion of the majority the question presented by the appellant is ruled against it by the principle announced in the case cited. In that case the irrigation company sued as a corporation created under the general law for the purpose of constructing and maintaining irrigation canals. By its suit it sought to enjoin the appellees from maintaining a dam on Mud creek above the point at which the waters of the creek entered its works. A demurrer to the petition was sustained and the suit dismissed. In affirming the case Judge Gaines said:

"The action, judging from the averments in the petition, seems to be based in part upon the theory that the charter of the company by designation of the locality of the canal gave it the exclusive right of the water for irrigating purposes in that locality. This we think a mistake. The franchise granted by the charter was the usual powers and privileges conferred upon such corporate bodies as should be organized under the general law of incorporation, to-

gether with the right to acquire by gift, purchase, or condemnation such property as was necessary or proper to carry out the objects of its creation. Act April 23, 1874, § 58.

"The charter conferred the right to acquire water privileges, but it did not confer the privileges themselves. This principle was announced by this court in the case of Tugwell v. Eagle Pass Ferry Company, Austin term, 1888. We there held that the ferry company by becoming a corporation under the general law for the purpose of maintaining a ferry over the Rio Grande at Eagle Pass acquired no right to operate such ferry without procuring a ferry license from the commissioners' court of the county in which the town is situated. The corporation by filing its articles of incorporation in compliance with the law was authorized to establish and maintain a ferry as a corporation at the point designated in its articles, but it did not acquire the ferry privilege itself. So in this case the plaintiff by its incorporation became invested with the power to acquire as a corporation a privilege of using the waters of Mud creek for the purpose of irrigation, but it did not thereby obtain a right to the use of the waters. That right remained to be acquired, which could have been done by either purchase or condemnation, provided the use was a public one.

"It is true that the act of March 10, 1875, provides that 'any * * * canal company shall have the free use of the waters and streams of the state,' but the provisions of that act applied as well to ordinary companies as to corporations. Laws 2d Sess. 14th Leg. 77. Besides we are of the opinion that the provision could be held only to apply to streams upon the public lands of the state, since the Legislature had no power to take away or impair the vested rights of riparian owners without providing for the payment of a just compensation. If the defendants or the owners of the land along the stream in controversy had the right to use the water for the purposes of irrigating their lands, that right remained unaffected by the plaintiff's incorporation or by the legislation of the state passed for the encouragement of irrigation."

The majority recognizes that the law under which the appellant is incorporated is very different from that under which the Mud Creek Irrigation Company was incorporated. The petitions in the two cases are perhaps otherwise distinguishable, but it is the view of the majority that the question presented by this appeal is ruled by the principles announced in the cited case.

The title to the riparian water rights appurtenant to lands abutting on the Pecos river and situate in appellant's district remained vested in the respective owners of these lands. Their title was not affected by appellant's incorporation. The law under which the appellant was incorporated and under which it operates expressly authorizes it to acquire these water rights, but in no wise undertook to confer same. Until it has in some manner connected itself with such riparian rights, it has no right to maintain a suit to enjoin other riparian owners or water users from diverting and using such waters. Such right and user is not an infringement of any right of the plaintiff, but affects only the right of the riparian landowners in its district, and if they do not see fit to complain the plaintiff cannot do so. The action of the court upon the demurrer presents no error.

[2] By another assignment appellant complains of the action of the court in refusing to continue the case so that it might make all of the parties owning or controlling riparian rights or water contractual rights within its district parties to the litigation.

It appears from the motion that it was made after the court had sustained the exception to the petition. The sustaining of this exception eliminated the only remaining right asserted by the plaintiff, and, since there was no offer to amend, there was no case left to continue.

But, aside from this consideration, the riparian landowners in appellant's district and contractual water right owners therein were not necessary parties to this particular suit. They would not have been bound by any judgment which might have been entered, and their rights could not have been affected in any way. The cases cited by appellant in this connection have no application. These owners can bring an independent suit for the protection of their rights whenever they see fit to do so, and the action of the court in refusing the application of this appellant to continue the case so that it might make them parties presents no error. Article 1848, R. S.

The opinion and ruling of the majority is limited to the action of the lower court upon the demurrer and refusal to continue the case. They express no opinion upon any other matter.

[3, 4] As to the appeal of the Cedarvale Company, complaining of the action of the court in striking out its cross-action against its codefendant, district No. 1, and dismissing the same, this matter presents no error. The grounds of the motion filed by district No. 2 asking that the cross-action be dismissed were that there was a former suit pending in the district court of Reeves county involving the subject-matter of the cross-action between district No. 1 and the predecessor in interest of the Cedarvale Canal Company, and further that to permit the prosecution of the cross-action would necessitate the continuance of the cause. In the condition of the record it must be assumed that the grounds of this motion were true, and, if so, the action of the court in striking out the cross-action and dismissing the same presents no error.

Affirmed.

WALTHALL, J. (concurring). The only question presented on this appeal to which I

care to refer arises on the sustained exception of appellee, Ward County irrigation district No. 1, and is to the effect that appellant bases its cause of action upon the ownership of riparian lands, and which ownership of the riparian lands is shown by the petition to be vested in the owners of the said lands, and not in plaintiff, the petition not alleging that the plaintiff is the owner of the riparian lands or riparian rights, and for that reason plaintiff shows no interest or right in itself to the land or water that it can assert against Ward County irrigation district No. 1. I am not sure that the case of Irrigation Co. v. Vivian, 74 Tex. 174, 11 S. W. 1078, referred to in the majority opinion, has the same application here as applied to the facts of that case.

Appellant is a water improvement district established by the commissioners' court of Ward county under chapter 87, General Laws 35th Leg., and by section 24 of the act authorized to do the things specified, and later herein more specifically stated, and issue bonds. While a corporation, authorized to sue and be sued, it is not a body created for profit, but one organized and established more as a political subdivision of the state, and having for its object the administration of the affairs of the water district in the management and ownership of rights to the use of water in the hands of those most interested in its intelligent and economic use, and to provide a method for acquiring the financial means for constructing a system of works necessary for the appropriation, distribution, and use of water, and incidentally to get from under the necessity of private corporations organized for the purpose of profit, and to enable the water consumers in the district to obtain water for their lands at first cost through the means of their own district organization. It is not my intention to write a discussion on the district policy or means of providing for the economic distribution of water in the arid portion of the state, but simply to make an observation on the water district system as provided, from my viewpoint, on the issue presented. I am under the impression that the case of Mud Creek I. A. & M. Co. v. Vivian et al., referred to in the majority opinion, is not exactly in point and decisive of the one question presented here. There the corporation was organized for profit, and not for administrative purposes. In that case Judge Gaines makes the observation that the action is based in part upon the theory that the charter of the company by designation of the locality of the canal gave it the exclusive right to the water for irrigation purposes in the locality, and held that the franchise gave the company the right to acquire such property as was necessary or proper to carry out the object of its creation, but did not confer the privileges themselves. There being no allegation that the company had acquired any interest in or right to use the waters of Mud creek, the exception was sustained. That opinion was delivered May 28, 1889. At that time we had no state law providing for the use of waters in the streams of the state other than the act of March 10, 1875 (Acts 2d Sess., 14th Leg. c. 63), which provided that any canal company could have the free use of the waters and streams of the state. At that time we had no statutory or other provision declaring the unowned and unappropriated waters of the ordinary flow of every flowing river or natural stream, and the storm, flood, and rain waters of every natural stream within the state, to be the property of the state, and that the right to the use of such waters might be acquired by appropriation for beneficial uses. Now, by edict of legislation, all such waters, and in fact all waters except the ordinary flow and underflow, may be acquired by appropriation, diverted and so used, except the ordinary flow and underflow of such waters as have become vested rights of riparian landowners. If our statutes are to be construed to mean that the riparian right to water and the right to appropriate and divert waters for purposes of irrigation runs only with the title or possessory rights to land, then, of course, to assert such rights it would be necessary for a private corporation organized for profit, and where the fee in lands are owned and taken in the name of a corporate body, to allege ownership or possessory right to land to which the rights would be appurtenant or allege that such rights had been acquired. The petition here does not assert ownership or possessory right to the lands mentioned to be in the corporate water district. Here, while the water district when established represents the combined interests of all of the lands in the district for purposes for which the district was established, it does not own the fee in the lands to be served with water, nor does it own the water rights appurtenant to such lands, nor does the petition allege the lands or water rights have been acquired by purchase or condemnation from the landowners.

The gist of the action being to adjudicate the respective rights of the landowners to the water in the two water districts, the question then presented by the sustained exception is: Does the corporation water district in the suit brought represent the real parties at interest? A brief review of the history and growth of water districts, culminating in several states in what are now corporation water districts, will possibly disclose more pointedly, as I conceive it, the point at issue presented by the exception. It is a general rule that the real parties at interest must be made parties to a suit; otherwise the interest not brought into the suit will not be committed by the results reached.

The contention made by the exception in the case at bar is that the suit cannot be sustained by the corporation water district without joining in the suit the landowners, for the reason that the corporation water district is not the real parties at interest, and that the real or main questions involved cannot, for that reason, be determined in a trial on the merits.

The community irrigating ditch or ascequia for the purpose of supplying water to lands is an institution peculiar to the people living in that portion of the Southwest where irrigation is necessary or beneficial in the cultivation of lands for agricultural purposes. In arid regions early settlements were made along the banks of streams where water was reasonably certain to be available for irrigation at needed times. When a settlement was established the people by their joint effort would construct an irrigation canal or ditch sufficiently large to convey water to their several lands for the irrigation of crops. Each individual owned and cultivated a specific tract of land, and from the main canal or ditch laterals were run to these various tracts of land to be watered. The distribution of the water and the repair of the main canal or ditch was in charge of a major-domo or officer elected by the water users under the canal. The official would require the water users to contribute labor toward the repair of the ditch and its maintenance, and also make an equitable distribution of water to the various water users in proportion to the land to be irrigated. There the water official was and has always been held to be but the agent of the individual owners of the lands under the ditch. The water users under the community system had no right to any specific water in the stream, but a right of use of the water for the purpose stated, a species of tenants in common, each having a common interest in the flow of the water by reason of the community of labor furnished. The fact that such water was diverted into a ditch common to all water users, and owned in common with other water users, did not give such other users any interest in, or control over, the right to take water from the stream which each individual water user possessed by reason of his ownership of his land. Such water right was appurtenant to the land he owned. That right was a several right, and the officer of the water community, in diverting the water, acted only as the agent of the water user. The act of the Thirty-Fifth Legislature, as we view it, is the outgrowth or development of the old water community system. It does not disturb or destroy individual ownership of the lands in the water districts into which they are incorporated, nor give to the incorporated water district the power to take away from the individual landowner the land or water owned by him. The act is administrative only, and for convenience gives a legal status to such organizations, in order to facilitate the distribution of the water and the establishment and maintenance of the canals. It does not attempt to interfere with the rights theretofore owned by the individual incorporators. It gives the right to the corporation to acquire water rights, but does no more, except as to the operation of the water system. If my interpretation of the act is sound, and the right, as expressed in the twenty-fourth section of the act, is to own and construct reservoirs, dams, wells, canals, etc., and to acquire the necessary right of way for and buy or construct all reservoirs, dams, etc., and other improvements required for the irrigation of the lands in such district by gift, grant, purchase, or condemnation, and it may acquire the title to any and all lands necessary or incident to the successful operation thereof, including the authority by purchase or condemnation to acquire rights of way for the enlargement, extension, or improvement of existing canals for the purpose of using such canals and ditches jointly with the owners thereof, it necessarily follows, it seems to me, that the individual landowner in the water district is a proper and necessary party in an action for an adjudication of water rights, where such rights are exercised through a corporation water district. The individual rights of the several landowners cannot be adjudicated in an action to which they are not parties. It is also my individual view that the corporations created under the act solely for administrative purposes can sue and be sued only where the gist of the action has reference to matters concerning the administration of the water district affairs, and not where the action involves the individual water rights of the participants under the water district. Acequia Del Llano v. Acequia Del Llano Frio (N. M.) 179 Pac. 235.

For the reasons stated, I concur in the result reached by the majority opinion.